STATE OF MINNESOTA *ex rel.* Ole Erickson *vs.* JOHN WEST.

December 6, 1889.

Constitution—"Criminal Offences"—Violations of City Ordinances.—
Violations of municipal ordinances, punishable by fine or imprisonment, are "criminal offences" within the meaning of article 1, § 7, of the constitution of the state, and consequently, where the prescribed punishment may exceed three months' imprisonment *or* $100 fine, (the limits of the jurisdiction of justices of the peace,) a person can be held to answer for them only on the indictment or information of a grand jury.

Same—Jurisdiction of Municipal Court.—Hence the municipal court of Minneapolis has no jurisdiction to try any case for the violation of a city ordinance where the prescribed punishment may exceed the limit referred to.

Same—Void Judgment—Habeas Corpus.—Its judgment, in such a case, is absolutely void, and the imprisonment of a defendant under it without authority of law, and he may be discharged therefrom on *habeas corpus.*

*Habeas corpus.* Appeal by the state from an order of the district court for Hennepin county, *Smith,* J. presiding, discharging the relator from imprisonment in the workhouse of Minneapolis, to which he had been committed by sentence of the municipal court of that city. The respondent below, John West, is the keeper of the workhouse.

*Moses E. Clapp,* Attorney General, *R. D. Russell,* and *Albert H. Hall,* for the State.

*Thomas Canty* and *Gjertsen & Rand,* for respondent, (relator.)

MITCHELL, J.[1] Upon complaint and warrant the defendant was arrested, tried, and convicted before the municipal court of Minne-

---

[1] Collins, J., was absent, and took no part in this case.

apolis of a violation of a city ordinance relative to misdemeanors, breaches of the peace, and disorderly conduct, and sentenced "to pay a fine of $100, *and* be imprisoned in the workhouse of the city for the period of 90 days, and, in default of payment of said fine, be committed for the further period of 90 days in addition thereto." This sentence was in accordance with the provisions of the ordinance, and no question is made but that the ordinance is authorized by the city charter. Neither are we referred to any other ordinance amending the one in question. Another ordinance provides for the establishment of a city workhouse, and for keeping at hard labor therein any person convicted of an offence before the municipal court subjecting such offender to imprisonment under the ordinances of the city. On this judgment of conviction a *mittimus* was issued, committing the defendant to the custody of the superintendent of the workhouse, to be by him there kept at hard labor for the period of 90 days, and also the further period of 90 days unless he should sooner pay the $100 fine or be sooner discharged by law. Upon a writ of *habeas corpus* the defendant was discharged by a judge of the district court, on the ground that his imprisonment was illegal. From this order the state appeals.

The point made against the judgment of the municipal court is that it was absolutely void, because that court had no jurisdiction to try the case. The contention is that violations of municipal ordinances, punishable by fine or imprisonment, are "criminal offences" within the meaning of article 1, § 7; of the constitution of the state, which provides that "no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury, except  *  *  *  in cases cognizable by justices of the peace," which last are, by article 6, § 8, of the same instrument, limited to cases where the punishment does not exceed three months' imprisonment, *or* a fine not exceeding $100. It is very clear that where the punishment may be *both* fine and imprisonment a criminal offence is not within the jurisdiction of a justice of the peace. Hence it follows, if violations of municipal ordinances are criminal offences within the meaning of the constitution, that wherever the prescribed punishment, as in the present case, may exceed three months' im-

prisonment *or* $100 fine, a person can only be held to answer for them on presentment or indictment of a grand jury. It is suggested in behalf of the state that the sentence of the court does not include hard labor during the term of imprisonment; that this is only in the commitment; and that it is no ground for the discharge of a prisoner that the commitment goes further than the judgment. The commitment is not subject to criticism, because, under the ordinances, hard labor follows as a consequence of the imprisonment, whether mentioned in the sentence or not. But even if the element of hard labor were eliminated it would not at all obviate the ground of defendant's objection to the jurisdiction of the court. Neither, if the punishment prescribed by a statute or ordinance is otherwise within the jurisdiction of a justice of the peace, would the fact that the imprisonment is at hard labor affect the question of jurisdiction. From time immemorial in England, and from the earliest days in this country, hard labor has been imposed as an incident to imprisonment, not only for felonies, but also for petty offences or violations of municipal ordinances, such as vagrancy, begging, disorderly conduct, and the like, summarily triable before justices, and other inferior tribunals. In giving justices jurisdiction in cases where the punishment might be "imprisonment" for a limited period, the language of the constitution must be presumed to have been adopted with reference to and in view of this fact. The constitution does not define the nature of the imprisonment, but leaves that to be determined by the legislature, subject only to the limitation that it shall not be cruel or unusual. Hence, whether it is within the power of the legislature to confer upon the municipal or any other court jurisdiction to try, on complaint, and without indictment, cases for violations of municipal ordinances, where the punishment prescribed may exceed 90 days' imprisonment *or* $100 fine, resolves itself into the question whether such offences are criminal within the meaning of art cle 1, § 7, of the constitution.

We are referred to some of our own decisions as settling this in the negative; but it will be found, upon examination of the cases, that, whatever *obiter* remarks may have been made, no such question has ever been decided by this court, or has ever before been presented for

its determination. In *State* v. *Lee*, 29 Minn. 445, (13 N. W. Rep. 913,)
what was decided was, not that violations of municipal ordinances were
not criminal offences, but that, inasmuch as the objects and purposes
of the state statute and of the municipal ordinance were different and
distinct, (the one to preserve the peace and dignity of the state, and the
other the good order of the municipality,) the same *act* might be an
*offence* against both, and a conviction under one no bar to a prose-
cution under the other for an offence arising out of the same act;
that the identity of an offence was to be determined by a refer-
ence both to the act done and the law which it violates.   This was
in accordance with what had been intimated in *State* v. *Charles,* 16
Minn. 426, (474,) and *State* v. *Ludwig*, 21 Minn. 202, and with the
views expressed by Justice Cornell in *State* v. *Oleson,* 26 Minn. 507,
512, (5 N. W. Rep, 959.)   In *City of Mankato* v. *Arnold,* 36 Minn.
62, (30 N. W. Rep. 305,) the only question before the court was
whether a defendant was entitled, under article 1, § 7, of the con-
stitution, to a trial by jury in a prosecution for a violation of a
municipal ordinance, and the only question decided was that it was
competent for the legislature to provide for the trial of causes in-
volving merely the violation of municipal ordinances in a summary
manner, without a jury.   It is true, it is said *arguendo* that offences
against such ordinances "are not generally construed to be criminal
cases, in the proper sense of the term 'criminal,' and the prosecu-
tions therefore are not 'criminal prosecutions' within the meaning
of the constitution, which refers to prosecutions for offences essen-
tially criminal under the general laws of the state."   But an exam-
ination of the entire opinion in that case, as well as of the line of
authorities cited in support of it, will show that the real ground
(and doubtless the correct one) upon which it was held that a per-
son was not entitled to a jury trial in such cases was, not that they
were not criminal, but because they were petty offences against mu-
nicipal ordinances.   The provision of article 1, § 7, of the consti-
tution, that "in all criminal prosecutions the accused shall enjoy
the right to a speedy and public trial by an impartial jury," etc.,
which is but declaratory of a right as old as *Magna Charta,* the
equivalent of which is to be found in almost every American consti-

tution, is not to be construed as absolutely and unqualifiedly apply-
ing to every case where a man may suffer punishment, but is to be
taken in an historical sense, and must be understood as referring to
such crimes and accusations as have, by the regular course of the
law and the established modes of procedure as theretofore practised,
been the subjects of jury trial. *State* v. *Glenn,* 54 Md. 572.

The extent to which certain classes of minor offences, either ac-
cording to the common law or created by statute, have been punish-
able by certain magisterial officers, in a summary way, without a
jury, both in England and this country, notwithstanding similar
guaranties of the right of jury trial, may be seen by reference to such
cases as *Byers* v. *Com.,* 42 Pa. St. 89; *Howe* v. *Treasurer of Plain-
field,* 37 N. J. Law, 145; and *State* v. *Glenn, supra.* While, in view
of the fact that at the time of the adoption of the state constitution
the right of jury trial existed in all criminal prosecutions under state
laws, regardless of the grade of the offence, it may be, as was assumed
in *State* v. *Everett,* 14 Minn. 330, (439,) and conceded in *City of Man-
kato* v. *Arnold, supra,* that, under the provision of article 1, § 4, that
"the right of trial by jury shall remain inviolate," (as it then existed,)
this right exists in all cases where by statute an act is made an of-
fence against the peace and dignity of the state, yet this does not nec-
essarily include petty offences for the violation of police ordinances
of municipalities, which almost always have been, according to es-
tablished modes of procedure, and from the necessities of the case
must be, tried summarily without a jury, the penalties being, as they
appropriately should be, comparatively light. This is all that is
really decided in *City of Mankato* v. *Arnold.* It is true that in some
of the cases referred to the prescribed punishment exceeded the limit
of the jurisdiction of justices of the peace, but in none of them was
the point now made ever raised or even suggested.

The question now before us is therefore *res integra,* and our con-
clusion is that offences for the violation of municipal ordinances, to
which a penalty, such as fine or imprisonment, is attached as a pun-
ishment, are "criminal offences" within the meaning of the constitu-
tional provision referred to. They come strictly within the definition

of "crimes or criminal offences." The terms "crime," "offence," and "criminal offence" are all synonymous, and ordinarily used interchangeably, and include any breach of law established for the protection of the public, as distinguished from an infringement of mere private rights, for which a penalty is imposed or punishment inflicted in any judicial proceeding. As said in *State* v. *Cantieny*, 34 Minn. 1, (24 N. W.· Rep. 458,) the term includes any punishable violation of law, the doing that which a penal law forbids, or omitting to do what it commands, and hence includes all violations of municipal ordinances punishable by fine or imprisonment. A municipal ordinance is as much a law for the protection of the public as is a criminal statute of the state, the only difference being that the one is designed for the protection of the municipality and the other for the protection of the whole state, and in both cases alike the punishment is imposed for the violation of a public law. If the state itself, directly, should make the act an offence, and prescribe the punishment, there could be no question but that the act would be a "crime" and the prosecution of it a "criminal prosecution," within the meaning of the constitution; and how can it make any difference, either in the intrinsic nature of the thing or in the consequences to the accused, whether the state does this itself, or delegates the power to pass the law to the municipal authorities? Again, if the provisions of the constitution do not apply to such prosecutions, there is practically no limitation upon the power of the legislature to delegate to these municipalities authority to try and punish summarily, without indictment, for violations of their ordinances, except, possibly, the implied and somewhat indefinite one that the punishment shall not be cruel, unusual, or disproportionate to the offence. The exercise of any such unlimited and indefinite power to summarily prosecute and punish would result in gross violations of the spirit and evident meaning of the constitution.

But, finally, if these are not "criminal offences," and convictions of them convictions of "crime," within the meaning of the constitution, then, under article 1, § 2, of that instrument, forbidding "involuntary servitude in the state, otherwise than in the punishment

of crime whereof the party shall have been duly convicted," a person convicted of a violation of a municipal ordinance could never be kept at hard labor during the term of his imprisonment, and the police power of municipalities would be deprived of what has been from time immemorial its most efficient and salutary means of preserving good order and enforcing obedience to their by-laws, as well as of protecting the health and morals of those convicted of the violation of such laws. There is nothing better settled than that enforced labor is "involuntary servitude" within the meaning of such constitutional provisions, and there is no room for construing the word "crime" in this connection as used in a different sense from that in which the expression "criminal offence" is used in section 7.

We are not called upon to determine what or how severe penalties the legislature may authorize municipal corporations to impose for violations of their ordinances, or how extensive criminal jurisdiction it may confer upon their municipal courts; but we are quite clear that violations of such ordinances to which a punishment is attached are "criminal offences;" and if the prescribed punishment is or may be greater than three months' imprisonment, *or* $100 fine, the accused can be required to answer for them only upon the indictment or information of a grand jury; and if the legislature assumes to confer upon any court jurisdiction to try such cases, it must provide the appropriate judicial machinery, to wit, a grand jury, for doing this in a constitutional way, which has not been done in the case of the municipal court of Minneapolis. As now constituted, that court has no jurisdiction to try any criminal case, either under the state laws or city ordinances, where the prescribed punishment exceeds three months' imprisonment or $100 fine. It follows that that court had no jurisdiction to try a case for a violation of the ordinance under which the defendant was convicted, and that its judgment therein was therefore absolutely void, and defendant's imprisonment illegal, and without authority of law. The judgment being not merely erroneous or irregular, but absolutely void for want of jurisdiction to try the case at all, or to render any judgment whatever therein, there is no question under any of the authorities but that this may be taken advantage of on *habeas corpus,* and the prisoner discharged. This

case and those of State ex rel. Abel, Bunnell, Miller, Norman, Olson, and Conley, respectively, are all alike, and in each the order appealed from is affirmed.

---

[1] Collins, J., was absent and took no part in this case.