## CRUTHERS v. THE STATE.

[No. 20,113. Filed June 19, 1903.]

CRIMINAL LAW.—*Bunko-Steering.*—*Extraterritorial Effect of Statute.*— Section 2178 Burns 1901, providing that "Whoever allures, entices or persuades another to any place upon any pretense, and then by duress or fraud compels such person to win, or lose, or advance, or loan money, or execute or give his note or other obligation, either for money or anything of value, or to part with anything of value, upon any game or wager, or by means of any trick, device or artifice, is guilty of bunko-steering, and upon conviction thereof, shall be imprisoned in the state prison," etc.,

has no extraterritorial force or operation, and the offense thereby defined can not be committed partly within the State of Indiana and partly without. *pp. 140–146.*

CRIMINAL LAW.—*Bunko-Steering.*—*Statute.*—*Construction.*—*Words and Phrases.*—The phrase "any place" as used in §2178 Burns 1901, defining bunko-steering, means some place within the State of Indiana; and the meaning thereof can not be so enlarged or extended as to make it apply to and include some place in another state. *pp. 145, 146.*

SAME.—*Accessories Before the Fact.*—*Aiding Felony in Another State.*— An information for aiding felony in another state, under §1645 Burns 1901, which by the laws of this State is a felony, must allege and show that the act or acts perpetrated by the principal constituted a public offense under the laws of such state. *pp. 146–149.*

From Hamilton Circuit Court; *J. F. Elliott*, Special Judge.

Tyler Cruthers was convicted of bunko-steering, and he appeals. *Reversed.*

*S. D. Stuart, C. G. Reagan* and *George Shirts*, for appellant.

*C. W. Miller*, Attorney-General, *C. C. Hadley, W. C. Geake, L. G. Rothschild, F. E. Gavin, T. P. Davis, J. L. Gavin* and *Frank Beals*, for State.

JORDAN, J.—Appellant Tyler Cruthers, jointly with one Horace W. Carey, was charged by affidavit and information with aiding and abetting, at the county of Hamilton, State of Indiana, the commission of the offense of bunko-steering in the state of Illinois, under §§1645, 2178 Burns 1901. He was tried separate and apart from his codefendant Carey, and after hearing the evidence and receiving the instructions of the court, the jury returned a verdict as follows: "We the jury find the defendant guilty of bunko-steering as charged in the affidavit and information, and that his true age is twenty-eight years. Ellis Roberts, foreman." Over appellant's motions for a new trial, in arrest of judgment, and to be discharged upon the ground that the verdict of the jury was not a finding that he was guilty of the crime charged in the affidavit and information, the court adjudged and decreed that said de-

fendant was guilty of bunko-steering as found by the jury, and that he be imprisoned in the Indiana reformatory at Jeffersonville, Indiana, for a period of not less than two nor more than fourteen years. The information originally consisted of five counts, all of which were quashed except the one numbered three and one-half upon which the case was finally tried. A motion to quash this last-mentioned count of the information was also overruled by the court, to which an exception was duly reserved by appellant.

The errors upon which appellant relies for a reversal are: (1) That the trial court had no jurisdiction over the subject-matter of the charge; (2) that the court erred in overruling the motion to quash the count numbered three and one-half of the information; (3) that the court erred in overruling the motion for a new trial; (4) in overruling the motion in arrest of judgment; and (5) in overruling the motion for the discharge of appellant upon the ground that the verdict of the jury was an acquittal of the crime charged.

The count of the information upon which appellant was tried and convicted is quite lengthy, and to set it out in full would unnecessarily extend this opinion. It is open to the objection that, in part at least, it contains what may be termed a recital of evidence instead of a direct averment of facts. We have endeavored to summarize the pleading as follows: Appellant, with his codefendant, one Horace W. Carey, each of whom is alleged to have been a resident and citizen of Hamilton county, Indiana, is charged with having, on the 28th day of April, 1902, in Hamilton county, Indiana, unlawfully and feloniously aided in and abetted an offense in the state of Illinois, which offense so aided and abetted by the said defendants was at said time a felony under the laws of the State of Indiana. The act or acts of such aiding and abetting by the defendants are alleged to have consisted in this: On or about the aforesaid day in April the defendants, at said

county of Hamilton, State of Indiana, did feloniously represent and claim to one Lucius B. Stout, the latter also being a citizen and resident of the said county, that the defendant Cruthers was going to run a foot-race at the city of Springfield, in the state of Illinois, on or about the 2d day of May, 1902, with another person, whose name is alleged to be unknown; that an arrangement had been entered into with one "Johnny Conners" to wager a large sum of money, to wit, $1,000, upon the result of said foot-race; that it was necessary for Cruthers to secure some one to go to the city of Springfield, in the state of Illinois, to act as an agent for Conners; the latter, as it was alleged, was to be the stakeholder at the said race; that said agent of Conners was to go to the said city of Springfield, and take with him money as a guaranty of good faith, but he was to conceal the fact that he was the agent of Conners or was acting for the latter. It was further represented that it would be necessary for said Stout to take with him money to the amount of $3,000 or $4,000, which was to be used only in a pretense by him of betting on the said foot-race; that it had been agreed and arranged that the defendant Cruthers should not win said race which was to take place at the said city of Springfield, but, upon the contrary, he was to throw the race in favor of his competitor. Stout, under the scheme, was not to bet his own money, but was only to pretend to bet money which would be furnished to him by Conners; and it was further represented that Stout would receive a large sum of money for serving at said race as the pretended agent of Conners. These representations are charged to have been feloniously made by the defendants to allure, induce, and persuade Stout to go to the said city of Springfield, and that thereby the defendants aided in and abetted the perpetration of an offense in the state of Illinois. The pleading then proceeds to charge and show that the said defendants and said Stout went to the city of Springfield,

Illinois, and were present there at the time the matters and things hereinafter stated and mentioned took place at said city, viz., that the defendants at the city of Springfield, in the state of Illinois, together with the assistance and coöperation of others, whose names are alleged to be unknown, instructed Stout to deposit his money, in the sum of $3,100, in a bank, and take a deposit check for the same, and ex-. hibit it when the betting took place, and in making each bet he was to go to the bank, pretending to draw his money, but as a fact Conners would furnish the necessary money for the purpose of betting, and Stout was instructed to agree to bet $10,000 on the competitor of Cruthers in the said race. Under these directions and instructions Stout, as averred, deposited $3,100 in a bank, and did pretend to draw money from the bank and bet on several occasions in respect to the said foot-race, but that the money, in fact, instead of being drawn from the bank, was furnished by Conners, and placed in his hands as the stakeholder, with an equal amount furnished and bet by other parties; that by this method Stout had apparently bet $7,000 against a like sum pretended to have been placed in the stakeholder's hands by others betting on the race that the competitor of Cruthers would win in the said race; that when it became essential to raise the last $3,000, as alleged, the defendants represented to Stout that it would be necessary for him to place his own money temporarily in the hands of Conners, but that it should not be used, but should be returned to him by Conners after the race, together with his share of money for the services rendered. Thereupon it is charged that Stout drew the money which he had deposited in the bank, and placed the same in the possession of Conners for the purpose of deceiving those who were betting on Cruthers, and that said money was never returned to him; that the parties pretended to run said foot-race, and also pretended that Cruthers had won over his competitor in the race; and thereby it is alleged that

Stout was compelled to and did lose and part with and pay over said sum of money upon and on account of said foot-race, and that said defendants did at said city of Springfield, there and by means of said pretenses, representations, statements, instructions, and acts as aforesaid, feloniously induce and compel said Stout to pay, wager, and lose $3,100 on account of the said foot-race.

Section 1645 Burns 1901, §1576 Horner 1901, reads as follows: "Every person who shall, while in this State, aid in and abet the perpetration, or attempt to perpetrate, an offense in another state which by the laws of this State is a felony, shall be deemed guilty of a felony; and upon conviction thereof shall be punished in the same manner and to the same extent as accessories before the fact to the commission of such a felony are prosecuted and punished by the criminal laws of the State; and it shall not be essential to the conviction of such person of said felony that the principal be prosecuted for the crime charged." Section 2178 Burns 1901, §2083 Horner 1901, which defines the crime of bunko-steering, provides as follows: "Whoever allures, entices or persuades another to any place upon any pretense, and then by duress or fraud compels such person to win, or lose, or advance, or loan money, or execute or give his note or other obligation, either for money or anything of value, or to part with anything of value upon any game or wager, or by means of any trick, device or artifice, is guilty of bunko-steering, and upon conviction thereof, shall be imprisoned in the state prison not more than fourteen years nor less than two years, and all persons present at such place and at such time, engaged therein, shall be prosecuted, tried and punished for such offense as principals."

The lower court, it appears, tried the case presented against appellant upon the theory that he had committed the crime of "bunko-steering" as defined by §2178, *supra*. The jury returned a verdict finding that he was guilty

Cruthers *v.* State.

thereof, and the trial court in its judgment expressly adjudged that he had committed that particular crime. That section has no extraterritorial force or operation, and the offense thereby defined can not be committed partly within the State of Indiana and partly without. *Johns* v. *State*, 19 Ind. 421, 81 Am. Dec. 408; *Stewart* v. *Jessup*, 51 Ind. 413, 19 Am. Rep. 739.

The question is not, as counsel for the State seemingly argue, in respect to the power of the legislature to prohibit and punish a part of a criminal act committed by a person within the State. That proposition is not before us, and in regard thereto we do not decide.

If the accused, under the facts alleged in the information, can, upon any view, be said to have committed any offense whatever against the laws of this State, then it must be that which is created or defined by §1645, *supra*, for certainly under the pleading he is not shown to have committed within this State the crime of bunko-steering as defined by §2178, *supra*. It is expressly disclosed by the information that all that he did in Hamilton county, Indiana, was to make the representations to Stout which, as charged, served to allure and entice the latter to go to the city of Springfield in the state of Illinois, at which city it appeared all of the acts were perpetrated by which Stout was compelled to lose or part with his money. The phrase "any place," as used in the statute defining "bunko-steering," undoubtedly means and contemplates some place within the State of Indiana, and the meaning thereof can not be so enlarged or extended as to make it apply to and include some place in another state. This meaning of the phrase is made more evident by the closing words of said section, whereby it is declared that "all persons present at such place at such time, and engaged therein, shall be prosecuted, tried, and punished for such offense as principals." The principle is elementary that penal statutes

Vol. 161—10

do not extend or reach any further in their meaning than the words or terms therein expressed, and no one is to be subjected to their penalties by implication. All doubts in respect to their interpretation or construction are to be solved in favor of the accused person.

We pass to the consideration of the question as to whether the information charges the offense created or defined by §1645, *supra.* It will be observed that this statute is of a twofold character. It is made a crime thereunder either to aid in and abet the perpetration of an offense in another state, or to aid and abet in an attempt to do so. This section has never been interpreted or construed by this court. In 1853 an act substantially the same as §1645, *supra,* was enacted by the legislature. Acts 1853, p. 72, 2 G. & H. p. 392, 2 R. S. 1876, p. 373. This statute was entitled as follows: "An act to provide for the punishment of persons guilty of counseling and advising, aiding and abetting, in this State, in the perpetration, or attempt to perpetrate, an offense in another state, which by the laws of this State shall be felony." The title thereof fully and clearly indicates that by the enactment of the act of 1853 it was the purpose and object of the legislature to provide a law under and by which any and all persons might be punished who were guilty of counseling, advising, aiding, and abetting within this State another person to commit or perpetrate some act or acts within some sister state, thereby committing a criminal offense against the laws of that state, which, if committed in the State of Indiana, would by and under its existing laws be a felony. In the opinion of this court in the appeal of *Johns* v. *State,* 19 Ind. 421, a dictum of Judge Worden occurs, where, in referring to the act of 1853, *supra,* he said: "We have a statute providing for the punishment of persons who have become accessories before the fact to felonies committed in other states." Section 1645, *supra,* does not profess or intend to empower the courts of this State to pun-

ish the principal offender who commits a public offense in another state; but, as intended by the act of 1853— from which, as previously stated, it has been copied substantially—it only professes and intends to make it a felonious crime for a person or persons to do any act or acts in this State in aiding and abetting another to perpetrate an offense outside thereof, in a sister state, which, if committed in this State, would, under its laws, be a felony. This, in our opinion, is the plain intent and meaning of the act in question.

That the word "offense" used in this statute means a penal or public offense or crime is well settled by the authorities. Bouvier in his Law Dictionary, under the title "offense," says: "The doing of that which a penal law forbids to be done, or omitting to do what it commands." It has been held that the terms "offense" and "crime" are synonymous. *People, ex rel., v. Board, etc.,* 39 Hun 507, s. c. *People, ex rel., v. French,* 102 N. Y. 583, 7 N. E. 913. Abbott's Law Dictionary, under the title of "offense," says: "A breach of the laws established for the protection of the public, as distinguished from an infringement of mere private rights; a punishable violation of law; a crime; also, sometimes, a crime of the lesser grade, a misdemeanor." In *Moore v. People,* 14 How. (U. S.) 13, 14 L. Ed. 306, the court said: "An offense in its legal signification means the transgression of law." See, also, *State v. Whittemore,* 50 N. H. 245, 9 Am. Rep. 196. The terms "crime," "offense," and "criminal offense" are all held in the appeal of *State, ex rel., v. West,* 42 Minn. 147, 43 N. W. 845, to be synonymous. Where a statute employs common law terms having a known meaning, it must be presumed, in the absence of anything to the contrary, that such terms or words were used in their common law sense or meaning. *Western Union Tel. Co. v. Scircle,* 103 Ind. 227.

It will be seen that the section in controversy contemplates or presupposes that there is a principal offender

who was aided and abetted in this State in the commission or perpetration of an offense in some other state, for the act provides that it shall not be essential to the conviction of the person aiding and abetting the offense "that the principal be prosecuted for the crime charged." If, under this statute, A is charged with having in this State become an accessory before the fact to B, in an alleged offense committed by the latter in the state of Illinois, it certainly would not be sufficient to render A guilty of having violated the provisions of §1645, *supra*, by merely charging or showing that what was done or perpetrated by B in Illinois would, if done or perpetrated in the State of Indiana, have constituted a felony under the laws of the latter State. The State, in the prosecution of B, would have to go further in its pleading, and allege and show that the act or acts which B, the alleged principal, perpetrated in the state of Illinois, also under the laws, either written or unwritten, of the latter state, constituted a public offense. B must be shown to be a guilty principal, liable to punishment under the laws of the state of Illinois, for surely it can not in reason be asserted that one can be charged and convicted of being an accessory before the fact in the commission of an offense which is not shown to have ever been committed. *McCarty* v. *State*, 44 Ind. 214, 15 Am. Rep. 232; McClain, Crim. Law, §207; 1 Bishop, Crim. Law (7th ed.), §§649, 662, 663, 666, 667, 675.

There is an entire absence in the information of any averment or facts to show that the acts done and perpetrated at the city of Springfield in the state of Illinois, by which Stout was compelled, as charged, to lose or part with his money, constituted an offense under the laws of the latter state. For this reason alone, regardless of any other infirmity which may be imputed to the information, it is fatally defective in charging appellant with the crime defined and created by §1645, *supra*. Therefore the mo-

tion to quash ought to have been sustained. For the error of the trial court in denying this motion the judgment is reversed, and the cause remanded to the lower court with instructions to quash the information.

Judgment reversed.