Ann S. Benkard and Another, as Trustees, etc., of Rudolph E. Schirmer, Deceased, Plaintiffs, *v.* William H. Leonard, as Trustee under a Certain Agreement Dated March 18, 1916, between Rudolph E. Schirmer and Another, Defendant.

First Department, March 6, 1931.

*Edward C. Raftery* of counsel [*Dennis F. O'Brien* with him on the brief; *O'Brien, Malevinsky & Driscoll,* attorneys], for the plaintiffs.

*W. H. L. Edwards* of counsel [*John McKim Minton, Jr.,* with him on the brief; *Edwards, Murphy & Minton,* attorneys], for the defendant.

MERRELL, J.   Under the agreed statement of facts it is stipulated by the respective parties to this controversy that a corporation known as G. Schirmer, Inc., was duly incorporated under the laws of the State of West Virginia on May 9, 1893, with a capital of $500,000, divided into 5,000 shares of the par value of $100 per share.   On March 18, 1916, one Rudolph E. Schirmer and Martha Barnes Schirmer were husband and wife, and on that day entered into an agreement in writing, over the signature and seal of each of said parties, and duly acknowledged, reciting that the parties to said agreement were, and for many years theretofore had been, husband and wife, but that the said parties to the agreement then were, and had for upwards of three years been, living separately and apart from each other; that on account of differences existing between the parties it was expected that such separation would continue, and that they would continue to live separately and apart. The agreement further recited that the said Martha Barnes Schirmer, party of the second part, had commenced, or was about to commence, an action in the State of Nevada against the said Rudolph E. Schirmer seeking a divorce on the ground of desertion, and that in such action the court, in the absence of a settlement between the parties, might have to take testimony as to the property of the parties in order to establish a suitable provision for the wife, which investigation the parties desired to avoid by entering into said agreement.   The agreement then proceeds to state that in consideration of the mutual promises and agreements thereinafter contained, the parties agreed, *first,* that so long as the parties continue to live separately and apart neither should interfere with the rights, privileges, doings or actions of the other party; *second,* that the first party should and would, during his lifetime and the lifetime of the second party, pay to said second party for her maintenance and support the sum of $15,000 per annum in equal monthly payments in advance on the first day of each and every month, beginning with the 1st day of April, 1916, and continuing each month thereafter so long as both parties should live; *third,* that the party of the first part transfer and assign to the party of the second part his interest in the lease of the house and premises in New York city, No. 243 East Seventeenth street, being the

present residence of the second party, and also give to said second party for her use during the term of her life all of the furniture and furnishings of said house belonging to said first party or in which he had any title or interest, except a certain collection of porcelains, prints and lacquers then in said house.

The said agreement then provides as follows: " Said first party does hereby convey and transfer unto William H. Leonard as trustee, Twelve Hundred and Fifty (1250) shares of the capital stock of G. Schirmer, Inc., a corporation organized and existing under the laws of the State of West Virginia, having a capital stock of Five Hundred Thousand Dollars ($500,000) divided into Five Thousand (5000) shares of the par value of One Hundred Dollars ($100.00) each, and does hereby promise and agree that he will forthwith assign and transfer and cause to be transferred upon the books of said corporation to the said William H. Leonard as trustee, certificates for said Twelve Hundred and Fifty shares of stock. The said certificates of stock shall be held by said William H. Leonard as trustee in trust, as follows: During the lifetime of both parties to this agreement the same shall be as security for the payments to be made as provided in paragraph 2 hereof, and all dividends upon said shares of stock shall by written order of the trustee be paid to said first party, unless at any time said first party shall have failed for a period of thirty days, to make any of the monthly payments to the second party under the terms of said paragraph 2, in which event all dividends upon said Twelve Hundred and Fifty shares of stock, then accrued or accruing, shall be collected by the trustee and paid to said second party until such arrears in monthly payments shall have been fully paid, and the balance, if any, of such dividends shall then be paid to said first party. Should said first party die before said second party then the amount said second party is to receive shall be limited to all dividends upon said Twelve Hundred and Fifty shares of stock not to exceed Fifteen Thousand Dollars ($15,000) per annum, and any surplus of dividends above Fifteen Thousand Dollars per annum shall be payable to the executors, administrators, successors in interest, or assigns, of said first party. *In the event that said second party survives said first party her right to the dividends on said stock up to the amount of Fifteen Thousand Dollars per annum and to the use of said furniture and furnishings of said house shall constitute the sole claim and interest of said second party in and to the estate of said first party.* Upon the death of said second party the said trust shall cease and said trustee shall transfer and assign the said shares of stock and the certificates therefor unto said first party, his executors, administrators, successors in interest, or

assigns. *During the existence of said trust the voting power of such stock shall remain in said first party, and the said trustee, or his successor, at the time of the delivery to him of the certificates for said stock, shall execute and give to said first party an irrevocable proxy authorizing said first party to vote all of said shares of stock at all meetings of the corporation during the continuance of such trust.* Should said William H. Leonard die, resign, or be removed as trustee, the said first party shall have the right to name his successor as trustee hereunder." (Italics are the writer's.) The portion of the contract above quoted gives rise to the controversy now before us.

It appears from the agreed statement of facts that at the time the agreement between Rudolph E. Schirmer and Martha Barnes Schirmer was entered into the said party of the first part was a director and president of G. Schirmer, and continued to hold the said position and office down to the date of his death, which occurred August 20, 1919. After the execution of the said agreement between the husband and wife on March 18, 1916, and during that month, upon her application, the said Martha Barnes Schirmer was granted an absolute divorce against the said Rudolph E. Schirmer by a duly qualified court of the State of Nevada. Prior to and at the time of the execution of the said written agreement between Rudolph E. Schirmer and his wife the former was the owner and holder of 2,500 shares of the capital stock of G. Schirmer. Pursuant to the terms of said agreement of March 18, 1916, the said Rudolph E. Schirmer did, on December 16, 1918, indorse a stock certificate, No. 17, for 1,250 shares of the capital stock of G. Schirmer, for transfer in the following terms: "Transfer to William H. Leonard as Trustee for Martha Barnes Schirmer, under agreement dated March 18th, 1916, between Rudolph E. Schirmer and Martha Barnes Schirmer," and the said stock was actually transferred on the books of the said corporation, under date of April 8, 1918, and delivered to the said William H. Leonard, as trustee for Martha Barnes Schirmer, on April 17, 1919. Since that time there has been no change in the record owner of said stock. It appears from the agreed statement that on December 16, 1918, Rudolph E. Schirmer executed a proxy to one William H. L. Edwards to vote 2,498 shares of the capital stock of G. Schirmer, under which proxy was included the said 1,250 shares of stock which were transferred to William H. Leonard, as trustee, as above stated. Rudolph E. Schirmer left a last will and testament under the terms of which there was established a trust for the benefit of his widow and infant son. A part of the corpus of the trust so established was all the testator's right, title and interest in and to the capital stock of G. Schirmer, including all

his right, title and interest in and to said 1,250 shares of said capital stock, subject to the terms of the agreement of March 18, 1916, between the testator and Martha Barnes Schirmer. The trustees of said trust named by the said will of Rudolph E. Schirmer, deceased, were Ann Swinburne Schirmer, now Ann S. Benkard, Oscar G. Sonneck and Gustave Schirmer, Jr. Of said trustees, Oscar G. Sonneck died on October 30, 1928, leaving as surviving trustees under the said will of Rudolph E. Schirmer, Ann Swinburne Schirmer, now Ann S. Benkard, and Gustave Schirmer, Jr., said two surviving trustees being named as plaintiffs in the present controversy. It is further stipulated by the respective parties that the only stockholders' meeting of the corporation, G. Schirmer, Inc., held in 1919, was held on January twenty-third of that year.

A dispute has arisen between the plaintiffs and the defendant, as trustee under the agreement between Rudolph E. Schirmer and Martha Barnes Schirmer, as to the right to vote the 1,250 shares of the capital stock of G. Schirmer, Inc., transferred to the said trustee pursuant to said agreement. This court is called upon, under the agreed facts, to determine as to who has the right to vote the 1,250 shares of the capital stock of said corporation.

Plaintiffs contend that upon the death of Rudolph E. Schirmer there passed to them, as his personal representatives, the right which he had to vote said stock during his lifetime. It is contended by defendant that by virtue of the fact that the stock was transferred to him and stands in his name he has the right to vote said stock during the continuance of said trust and until the death of Martha Barnes Schirmer. In our opinion the plaintiffs must prevail in their contention. While it is true that, pursuant to the terms of the agreement of March 18, 1916, Rudolph E. Schirmer, on December 16, 1918, indorsed stock certificate No. 17, for 1,250 shares of the capital stock of G. Schirmer, Inc., for transfer to defendant, such transfer, however, was upon the following terms: "Transfer to William H. Leonard, as Trustee for Martha Barnes Schirmer, under agreement dated March 18th, 1916, between Rudolph E. Schirmer and Martha Barnes Schirmer." Thereafter the said stock was actually transferred on the books of the corporation, under date of April 8, 1918, and delivered to said trustee on April 17, 1919. It, therefore, appears that said trustee received said stock under the provisions of the agreement entered into between Schirmer and his wife. The stock was delivered to defendant as a pledge for the performance of the agreement of the husband to pay to the wife $15,000 a year for her maintenance and support. The ownership and control of said 1,250 shares of the stock of G. Schirmer, Inc., were given to the defendant for the

purposes and under the limitations prescribed by the agreement entered into between the husband and wife. The right to vote such stock during the existence of said trust was expressly provided for in the agreement in the following language: "*During the existence of said trust* the voting power of such stock shall remain in said first party, * * *." (Italics are the writer's.)

It thus appears that under the provisions of the agreement the voting power of this stock was at all times retained by Rudolph E. Schirmer, and such power rested in him at the time of his decease. The existence of the trust was not limited to the lifetime of Rudolph E. Schirmer, but continued until the death of Martha Barnes Schirmer. The agreement provides that "Upon the death of said second party the said trust shall cease and said trustee shall transfer and assign the said shares of stock and the certificates therefor unto said first party, his executors, administrators, successors in interest, or assigns." As a matter of fact, Rudolph E. Schirmer predeceased Martha Barnes Schirmer. Such contingency was clearly provided for under the terms of the agreement between Schirmer and his wife, in the following language: "Should said first party [Rudolph E. Schirmer] die before said second party then the amount said second party is to receive shall be limited to all dividends upon said Twelve Hundred and Fifty shares of stock not to exceed Fifteen Thousand Dollars ($15,000) per annum, and any surplus of dividends above Fifteen Thousand Dollars per annum shall be payable to the executors, administrators, successors in interest, or assigns, of said first party. In the event that said second party survives said first party her right to the dividends on said stock up to the amount of Fifteen Thousand Dollars per annum and to the use of said furniture and furnishings of said house shall constitute the sole claim and interest of said second party in and to the estate of said first party." It clearly appears from the quotations from said agreement last above made that upon the death of Rudolph E. Schirmer the only claim which Martha Barnes Schirmer could assert under said agreement was to receive the dividends upon the said 1,250 shares of stock of G. Schirmer, Inc., not to exceed $15,000 per annum, any surplus of said dividends over that amount being payable to the estate of her deceased husband, and that in the event of her surviving her husband her right to the dividends on said stock up to the amount of $15,000 per annum and to the use of said furniture and furnishings of said house *constituted her sole claim and interest* in and to the estate of Rudolph E. Schirmer.

While there was a transfer of the stock in question to the trustee, his duties were limited and defined by the provisions of the agree-

ment. The agreement provides that " During the lifetime of both parties to this agreement the same shall be as security for the payments to be made as provided in paragraph 2 hereof, and all dividends upon said shares of stock shall by written order of the trustee be paid to said first party, unless at any time said first party shall have failed for a period of thirty days, to make any of the monthly payments to the second party under the terms of said paragraph 2, in which event all dividends upon said Twelve Hundred and Fifty shares of stock, then accrued or accruing, shall be collected by the trustee and paid to said second party until such arrears in monthly payments shall have been fully paid, and the balance, if any, of such dividends shall then be paid to said first party."

There is not to be found in the agreement for the transfer to the trustee of said stock any suggestion of the transfer of any voting power to him. Indeed, the agreement provides that during the existence of the trust the voting power of such stock is to remain in the said Rudolph E. Schirmer. At no time was the trustee given any voting power of said stock. The stock was held by the trustee merely as security for the performance of the agreement to pay Martha Barnes Schirmer during her lifetime the sum of $15,000 per year. The personal representative of a deceased person is entitled to vote the stock of his decedent standing on the books of the corporation in the decedent's name, and this without formal transfer of the shares to the representative on the books of the corporation. It is the settled law in this State that upon the death of a stockholder of a corporation his estate succeeds him in the title to and the rights in any stock which he held at the time of his decease. (*Bailey* v. *Hollister*, 26 N. Y. 112.) In the case last cited Judge GOULD, writing for the Court of Appeals, said (at p. 116): " It will be conceded that when a stockholder in any corporation dies, his estate succeeds him in the title to, and the rights in, the stock he held."

In our opinion, upon the death of Rudolph E. Schirmer, whatever rights he had to the stock in question, whether it be for the excess of income over $15,000 or the right to vote the stock in question, passed to his personal representatives.

While it is true, as contended for by defendant, that the transfer of the stock in question was made to defendant, it was made to him, " as Trustee for Martha Barnes Schirmer, under agreement dated March 18th, 1916, between Rudolph E. Schirmer and Martha Barnes Schirmer." We must, therefore, look to the provisions of said agreement to determine the actual rights of the defendant in the premises. Undoubtedly, for the mere purpose of voting the

stock at an election, the inspectors of the election could not inquire into any equity under which the shares were held or look behind what the corporate books disclosed, but where it appears, as appears by the agreed statement of facts, that the pledgee of this stock in question held the same under a limited authority, the court may properly determine as to where the voting power of said stock rests. (*McHenry* v. *Jewett*, 26 Hun, 453.)

In Thompson on Corporations (3d ed., vol. 2, §§ 961, 962) the text writer (at p. 340) states the principle that while the shares of stock might stand on the books of the corporation in the name of the pledgee, and while the inspectors of election may not go behind the record in determining the right of a shareholder to vote, nevertheless, the pledgor had the right to apply to a court of equity to determine the voting right of the stock and to restrain the pledgee from voting the same illegally, or to compel the pledgee to execute a proxy in favor of the pledgor. The agreed statement of facts before us clearly shows that the ownership of said stock by defendant, as trustee, was a limited one and governed by the agreement entered into between Rudolph E. Schirmer and Martha Barnes Schirmer, his wife, under date of March 18, 1916. The stock in question is registered on the books of the corporation, subject to an agreement under the terms of which the voting power of said stock was reserved in the pledgor and the stock was held by defendant merely as a pledgee as security for the faithful performance of the terms and conditions of said agreement, namely, for the payment to Martha Barnes Schirmer of $15,000 per annum during her lifetime.

We conclude, therefore, that, upon the death of Rudolph E. Schirmer, the right to vote the stock in question passed to his personal representatives, the plaintiffs in the present action. Judgment should, therefore, be directed in favor of plaintiffs without costs to either party as against the other.

DOWLING, P. J., FINCH and O'MALLEY, JJ., concur; SHERMAN, J., dissents.

SHERMAN, J. (dissenting). The true meaning of the agreement of March 18, 1916, must be gleaned from the entire contract. The relation of the parties, the surrounding circumstances and the apparent purpose to be accomplished come into play. (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519, 524.) During the husband's life he was obligated to pay to the wife for her support and maintenance the sum of $15,000 per annum. For his failure to make such payments, a judgment could be rendered against him. The 1,250 shares of stock in G. Schirmer, Inc., of which he was

president, were transferred to defendant trustee, who was invested with legal title for the wife's protection. These shares were security for performance by Mr. Schirmer of his engagement. He was entitled to receive the dividends only so long as he performed that obligation.

Upon his death, however, the situation was altered. The agreement to pay the annual sum was not binding on his estate. The primary obligation to secure which the shares had been transferred and delivered to defendant ceased. The shares were no longer held as security for the performance of Mr. Schirmer's obligation under the contract, but as Mrs. Schirmer's sole means of support. She (and defendant in her behalf) had to look solely to the dividends which might be declared upon the shares of stock. If no dividends were declared in the discretion of the board of directors, she would receive nothing for her support. The entire purpose of the agreement might thus be defeated. Yet we are told that her trustee whose duty it was to protect her interests cannot enter, or be heard at, a stockholders' meeting but must deliver his proxy to plaintiffs who might conclude to defer dividends to the enrichment of the corporation and the ultimate enhancement of the value of the shares which upon her death pass to and become part of the corpus of the trust established for the benefit of plaintiffs' *cestuis*.

Under such circumstances where under the statute (Stock Corp. Law, § 47) the voting power resides in defendant as the registered owner of the shares holding legal title thereto, the agreement may not be accorded a meaning which might thwart its dominant purpose, unless there is clear and convincing warrant in its language requiring that conclusion. It is significant that where property belonging to Mr. Schirmer is to pass to his estate or assigns, appropriate words are employed. The excess of dividends above $15,000 per annum and the ultimate ownership of the shares go by explicit provision to his " executors, administrators, successors in interest, or assigns." Not so, however, the voting power. That was to be his; as I view it, a personal right, to lend him aid in controlling the policy of the corporation to the end that he might derive therefrom dividends which he could use in paying his annual obligation to his wife. This right lasted only as long as he lived and was obligated to make these payments. Like the power to appoint Leonard's successor as trustee for his wife given to Mr. Schirmer by the immediately following sentence of the agreement, it was personal to him. No words of succession are employed in either sentence. The agreement does not give the right to any one else. If such had been intended, appropriate language could readily have been inserted by the draftsman of this carefully prepared

agreement providing for the delivery of the proxy to his personal representatives or to testamentary trustees after his death. This omission is noteworthy. Delivery of the proxy during the life of the trust was conditioned upon the continued existence of the particular individual who was to receive it and who alone was given the right to exercise it. Upon his death, therefore, the voting rights must, under the statute, belong to defendant shareholder.

Judgment should be directed in favor of defendant.

Judgment directed in favor of plaintiffs, without costs to either party as against the other. Settle order on notice.