MANUFACTURERS TRUST COMPANY, Appellant, *v.* MOSES H. GROSS-MAN, Respondent.

First Department, March 27, 1936.

*David Paine* of counsel [*Thomas Kiernan* with him on the brief; *White & Case*, attorneys], for the appellant.

*David Vorhaus* of counsel [*Jesse Hemley* with him on the brief; *House, Grossman, Vorhaus & Hemley*, attorneys], for the respondent.

GLENNON, J.  Plaintiff, on this appeal, asks summary judgment in the sum of $29,000, with interest, on a promissory note dated November 17, 1932, made by the defendant to plaintiff's order. The obligation upon which the present suit is founded is the last of a series of renewal notes given by defendant to plaintiff for an original loan of $75,000.

In the defenses, which are three in number, it is set forth: (1) That the note was made by defendant, without any consideration therefor of any kind whatsoever, and that the plaintiff is not a holder in due course; (2) that the note was made by defendant and delivered to plaintiff, without consideration, at the request of the plaintiff, for the special purpose and accommodation of the plaintiff and not for the purpose of transferring any property therein or of creating any liability thereby; and (3) that the note was delivered without consideration and on the promise and agreement of the plaintiff and on the express condition that no liability on the part of defendant was to be created or incurred, that neither the note, nor any part thereof, was to be paid by defendant and that he would not be called upon to pay the same or any part thereof and was not to be sued thereon by plaintiff.

We believe that the facts which are set forth in defendant's affidavits are insufficient to sustain the defenses, even if we assume as true everything which the defendant avers.

The defendant is a member of a law firm which acted as attorneys for one Frederick Brown. The latter, either personally or through corporations controlled by him, owned considerable stock of the plaintiff, Manufacturers Trust Company. Brown and his corporations, according to defendant, were indebted to the plaintiff in the sum of several million dollars during the latter part of

November, 1930. In August of that year, an action was commenced against Brown by the Midurban Realty Corporation to recover the sum of $620,352.64, together with interest and other charges. In the latter part of November, 1930, Brown approached the defendant in order to seek his aid in conducting negotiations for an adjustment of that action. According to the affidavit of Grossman, Brown sought his advice because " I had shown resourcefulness in the solution of other problems that had seemed to be insolvable, and  *  *  *  because he knew the friendly relations existing between  *  *  *  the attorney for the Midurban Realty Corporation and myself."

Conferences were had with the representative of Midurban Realty Corporation, and on December 1, 1930, a stipulation was signed. Brown was required to pay $125,000 and interest on the following day. He had available only the sum of $50,000 in cash, and, consequently, had to raise funds in order to comply with the terms of the settlement agreement. Brown was a director of the plaintiff bank. Apparently, he spoke to Nathan S. Jonas, who at that time was chairman of the board of directors of plaintiff. On the evening of December 1, 1930, Grossman went to a hotel in New York city where he met Brown and Jonas. There was a discussion concerning a proposed loan by plaintiff to Brown in order to enable him to make the payment of $125,000 the following day. Jonas was unwilling to approve of a loan directly to Brown since his corporations were greatly indebted to the bank, and also because of the fact that Brown was a director. Jonas proposed that defendant Grossman should give his note to the bank for $75,000. Grossman, we are told, at first declined, saying that he was already indebted to the bank in the sum of $35,000 and did not care to fill out the elaborate printed form and statement required by the bank in connection with loans. To this Jonas replied that he would instruct the manager of the branch wherein Grossman had his account to make the loan and would require only that Grossman should write a letter of two or three lines addressed to the bank saying that his net worth was in excess of $250,000. Grossman asserts that Jonas was insistent upon his signing the note despite his protestations. He stated to Grossman that " he was not asking me [Grossman] to obligate myself through the execution of the note and that this was simply his method of advancing the money to Frederick Brown."

In the course of the conversation, after Brown had left the room for a few moments, Jonas said " that as the Bank was a very large creditor of Frederick Brown it was vitally interested in avoiding a judgment being taken against him." Later, upon

Brown's return: " Mr. Jonas said that while Mr. Brown and his corporations needed a little time to raise the money without sacrificing assets, they were amply solvent; that the Bank would look to them alone for payment and would not look to me or hold me liable for the payment of the note; that this was simply his method of having the Bank advance the money to Mr. Brown. I then said to Mr. Jonas that I would sign the note only upon the condition and understanding that it would not be my obligation, that I would not be asked to pay it, and that I would never be sued on it, and he and Mr. Brown both stated that that was the understanding and thereupon I said I would sign such a note. Mr. Jonas told me that when I went to the Bank the next morning with the note and letter I should tell Mr. Clinkunbroomer to call him up."

On the following morning, December 2, 1930, Grossman went to his bank and saw the branch manager. After a conversation the latter called Jonas who gave directions that the loan was to be made. Grossman signed, executed and delivered his note for $75,000 to the bank. After deducting the discount, his account was credited with $73,875. Grossman thereupon returned to his office and drew a check for $73,875 to the order of Brown. The latter on the same day deposited it in the plaintiff bank in the account of Concord Estates Corporation which he controlled. The money thus advanced by the bank to Grossman in the first instance was used by Brown for the purpose of carrying through the settlement which the defendant had negotiated for him. Thereafter, payments on account were made and renewal notes, thirteen in number, given by defendant to plaintiff. In each instance a new note was delivered and discounted and the old note returned. Defendant claims that every payment in reduction of the notes, as well as all interest and other charges were made by him with moneys supplied by Brown.

Apparently, plaintiff is not in a position to dispute any alleged agreement which the defendant may have had with Jonas since the latter severed his connections with the bank during the month of August, 1931. However, it contends, and properly so, that the evidence offered by defendant would constitute an attempt to vary or contradict the written contract between the parties. The note sued upon was a direct promise by the defendant to pay the sum of $29,000 to the order of plaintiff. There was certainly no conditional delivery of that written obligation to pay when it fell due. Furthermore, the facts and circumstances related by the defendant indicate quite clearly that the original note was not conditionally delivered.

The purpose of the loan which the note was given to secure was to obtain the bank's funds for the use and benefit of the defendant's client. The transaction itself showed a " resourcefulness in the solution of [Brown's] problems that had seemed to be insolvable." If subterfuge had to be resorted to by two of the plaintiff's directors and the defendant to put one of the directors in funds sufficient to meet his personal obligation, then the bank should not be compelled to suffer. The private arrangements which were adopted to carry out this purpose find no warrant in law.

We have reached the conclusion, therefore, (1) that there was ample consideration for the note in suit; (2) that there was no conditional delivery, and (3) that the proof relied upon by defendant in an attempt to sustain his contention that no liability on his part was to be created or incurred would be inadmissible. (*Grannis* v. *Stevens*, 216 N. Y. 583; *County Trust Co.* v. *Mara*, 242 App. Div. 206; affd., 266 N. Y. 540.)

The order of Special Term accordingly should be reversed, with twenty dollars costs and disbursements, and the motion for summary judgment granted in favor of plaintiff for the relief demanded in the complaint.

McAvoy, O'Malley and Townley, JJ., concur; Martin, P. J., dissents.

Order reversed, with twenty dollars costs and disbursements, and motion granted for the relief demanded in the complaint.