FISK DISCOUNT CORPORATION, Respondent, *v.* BROOKLYN TAXICAB TRANS. CO., INC., Appellant, and CHECKER CAB SALES CORPORATION, Impleaded Defendant-Respondent.

BROOKLYN TAXICAB TRANS. CO., INC., Appellant, *v.* FISK DISCOUNT CORPORATION, Respondent.

Second Department, March 11, 1946.

*Marcus Klein* and *Benjamin A. Hartstein* for appellant.

*Samuel H. Kaufman* for Fisk Discount Corporation and Checker Cab Sales Corporation, respondents.

JOHNSTON, J. These two actions were consolidated and tried together. The first, instituted by Fisk Discount Corporation (hereinafter called Fisk) against the Brooklyn Taxicab Trans. Co., Inc. (hereinafter called Brooklyn), is in replevin to recover possession of 100 taxicabs sold to Brooklyn by the impleaded defendant, Checker Cab Sales Corporation (hereinafter called Checker), under a conditional sales agreement assigned by Checker to Fisk. The second, brought by Brooklyn against Fisk, is to recover damages by reason of the latter's alleged failure to retain the cabs for ten days after retaking them in the replevin action, as required by section 78 of the Personal Property Law, and by reason of Fisk's alleged failure to give Brooklyn ten days' notice of the sale of the cabs, as required by section 79 of the Personal Property Law.

At the close of the case the court directed a verdict for plaintiff Fisk and dismissed Brooklyn's cross complaint against Checker in the first action, and also dismissed Brooklyn's complaint against Fisk in the second action. Brooklyn appeals.

Checker is engaged in the business of selling taxicabs and its sales are financed by Fisk. On April 22, 1931, Brooklyn purchased fifty cabs from Checker under a conditional sales contract. The agreed price was $99,600. Brooklyn made a cash payment of $19,600 and received a trade-in allowance of $15,000, leaving a balance of $65,000, for which it delivered its negotiable promissory note, maturing May 1, 1932, payable in semi-monthly instalments of approximately $2,500, with interest at 6%.

On June 1, 1931, Brooklyn purchased fifty additional cabs from Checker under a conditional sales contract. The agreed price was $99,600. Brooklyn received a trade-in allowance of $25,950, leaving a balance of $73,650, for which it delivered its negotiable promissory note, maturing July 15, 1932, payable in semi-monthly installments of approximately $2,500, with interest at 6%. Checker thereafter assigned both notes and contracts to Fisk.

On the first contract, Brooklyn, up to January 5, 1932, made payments of $34,375, leaving a balance of $30,625, and on the second contract, Brooklyn, up to January 7, 1932, made payments of $25,750, leaving a balance of $47,900. The total then remaining unpaid was $78,525.

On January 18, 1932, Brooklyn, being unable to make further payments, voluntarily surrendered the 100 cabs to Checker and Fisk. Negotiations then ensued between Morris Markin, president of Checker, who represented both Checker and Fisk, and Harris Hyman, Brooklyn's secretary and treasurer and the owner of all its issued stock.

These negotiations culminated in the return of the cabs to Brooklyn on February 10, 1932, and the execution by Brooklyn on March 15, 1932, of a new note, a new conditional sales contract and a supplemental letter agreement. The amount specified in the new note and contract was $82,669, being the balance due under the old contracts, plus accrued interest and finance and insurance charges. The new note, maturing March 15, 1933, was payable in monthly installments of approximately $7,000, with interest at 6%.

While in form the new contract was for the sale of the same 100 cabs by Checker to Brooklyn, its meaning and intent are expressly set forth in the supplemental letter agreement between Fisk, Checker and Brooklyn. That agreement states that the new note and contract are " In consideration of the renewal and extension of " the two old notes and contracts and that the new note is " to evidence such renewal and extension."

After the execution of the new note and up to June 1, 1932, Brooklyn made partial payments totaling $7,000 which, together with the prior payments and trade-in allowances, brought Brooklyn's total credits to $127,675 as against the original purchase price of $199,200.

Brooklyn made no further payments and on December 21, 1932, Fisk, as Checker's assignee, instituted the replevin action to recover the 100 cabs, based on Brooklyn's default in paying the installments due between May 15, 1932, and December 15, 1932.

While Brooklyn in its answer pleaded several defenses and also a counterclaim for reformation of the supplemental letter agreement, it now concedes that the evidence was insufficient to sustain its counterclaim and relies solely upon the defense that the note of March 15, 1932, and the conditional sales contract accompanying it were delivered subject to a " condition precedent ", namely, that they were to have no validity and were not to be binding upon Brooklyn if it thereafter paid to Fisk or Checker, in reduction of the balance due, the net profits remaining from Brooklyn's operation of the cabs.

In support of Brooklyn's defense of conditional delivery, Mr. Hyman testified to conversations with Mr. Markin prior to March 15, 1932, when Brooklyn executed and delivered the note, the conditional sales contract and the supplemental agreement. The substance of these conversations is that Brooklyn was not to make the installment payments as provided in the note and conditional sales contract, but was to pay in reduction of its

indebtedness to Fisk only the net profits derived from the operation of the cabs.

The testimony was admitted over objection and subject to a motion to strike it from the record. Thereafter the court granted the motion on the ground that it tended to vary the terms of a written contract. Brooklyn asserts this was error, as a condition precedent to the effective delivery of a written contract always may be proved. But the testimony related not to a condition precedent, but to a condition subsequent. The rule is well established that testimony as to any condition which relates to an event subsequent to the completed delivery of a written contract is inadmissible if it tends to vary the terms of the contract. (*Central Hanover Bank & Trust Co.* v. *Duffy,* 258 N. Y. 600; *Ruppert* v. *Singhi,* 243 N. Y. 156, 160; *Jamestown Business College Assn.* v. *Allen,* 172 N. Y. 291, 294, 296–297; *Grannis* v. *Stevens,* 216 N. Y. 583, 587; *Manufacturers Trust Co.* v. *Grossman,* 247 App. Div. 199, affd. 272 N. Y. 471; *Banque Franco-Americaine* v. *Bergstrom,* 171 App. Div. 870, 873.)

The note and the accompanying contract and letter agreement of March 15, 1932, were delivered without any qualifying conditions and they thus gained validity as a contract *in esse.* The conditions to which Mr. Hyman testified all related to a matter which was to occur subsequently, namely, the manner of discharging or terminating the obligation by the payment of the net proceeds from the operation of the cabs. Obviously, without Mr. Hyman's testimony Brooklyn had no defense to the replevin action and the court properly directed a verdict for Fisk.

As to Brooklyn's action against Fisk, a more important question is presented. That action, brought pursuant to section 80-e of the Personal Property Law, is to recover damages of $31,918.75, or 25% of the total of $127,675, which Brooklyn paid for the 100 cabs. The statute provides that: "If the seller fails to comply with the provisions of sections seventy-eight, seventy-nine, * * * after retaking the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract, with interest." (Personal Property Law, § 80-e.)

The basis of the action is twofold: (1) that Fisk did not comply with the provisions of section 78, in that it failed to retain the cabs for ten days after the retaking; and (2) that Fisk did not comply with the provisions of section 79, in that it failed to give Brooklyn ten days' written notice of sale.

Three years after Fisk had interposed its amended answer containing a general denial and several defenses, it served a supplemental amended answer in which it pleaded a general release executed by Brooklyn on June 21, 1937. The court held the release constituted a bar and dismissed the complaint. This was error, but before considering the effect of the release it will be necessary to determine whether Fisk, after the retaking, complied with the pertinent statutes.

Section 78 of the Personal Property Law provides: " If the seller does not give the notice of intention to retake described in section seventy-seven, he shall retain the goods for ten days after the retaking * * * during which period the buyer, upon payment or tender of the amount due * * * [and] the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred ".

Fisk did not give the notice of intention to retake as prescribed by section 77. Hence, it was incumbent upon it to retain the cabs for a period of ten days *after* the *retaking.* Whether Fisk did so depends upon the interpretation to be given to the two italicized words.

The proof, consisting of the uncontradicted testimony of the deputy sheriff, as well as the official documentary records of the sheriff's office, shows the writ of replevin was issued on December 21, 1932. On December 23d, the sheriff took possession of the cabs and, with aid of Fisk's chauffeurs, drove them to a garage in Manhattan because he could not find a garage in Brooklyn large enough to accommodate them. At the same time the sheriff informed Fisk's representative and the garage owner that the cabs were in his possession and were to remain at the garage until he released them. As December 26th was a public holiday, the sheriff waited until after 4:00 P.M. on December 27th, when he " returned these replevin papers as complied with, and notified the Fisk, or the garage, that the cars were released on the *28th."* On December 27th, Fisk, by registered mail, notified Brooklyn that the cabs would be sold at public auction on January 6, 1933, and admittedly they were sold at that time. It will be observed that while the notification by the sheriff to Fisk and the garage owner was given after 4:00 P.M. on the 27th, the sheriff directed that the cabs be released on the *28th.*

Fisk urged that the " retaking " specified in section 78 was accomplished when the sheriff on December 23d took posses-

sion of the cabs under the writ of replevin, since he acts for and on behalf of the party issuing the writ. We hold that the sheriff's possession under the writ is not the retaking by the seller contemplated by section 78. While the sheriff executes the writ at the instance of a party, he is not his agent but an independent officer of the law and the arm of the court. The sheriff's execution of the writ before the service of the summons, as in this case, is equivalent to the granting of a provisional remedy which gives the court jurisdiction in the action. (Civ. Prac. Act, § 1092.) After the sheriff obtains possession under the writ he must retain possession for three days, for " Within three days after the chattel is replevied " the defendant has a right to require its return or to file exceptions to the sureties on plaintiff's undertaking. (Civ. Prac. Act, §§ 1102, 1103.) If defendant within those three days serves the requisite notice for the return of the chattel, together with a proper undertaking, he is entitled to the return of the chattel unless the plaintiff excepts to the sureties on defendant's undertaking and defendant fails to justify his sureties. Or if the defendant within those three days excepts to the sureties on plaintiff's undertaking and plaintiff fails to justify his sureties, then defendant is also entitled to the immediate return of the chattel. (Civ. Prac. Act, § 1105.) Unless the sheriff delivers the chattel to either party in accordance with the statutory provisions, " he is responsible for the sufficiency of the sureties of the plaintiff or the defendant, as the case may be " (Civ. Prac. Act, § 1105), and " forfeits to the party aggrieved two hundred and fifty dollars, and is also liable to him for all damages which he sustains thereby." (Civ. Prac. Act, § 1106.)

It has been held that while the sheriff is in possession of the chattel pursuant to a writ, the chattel is deemed to be not in the possession of the seller or the party who issued the writ, but *in custodia legis*. (*Spitaleri* v. *Brown*, 163 App. Div. 644; *Sigal* v. *Hatch Co.*, 61 Misc. 332, and cases cited.)

In *Montgomery Acceptance Corp.* v. *Coon* (263 N. Y. 561) it was held that the replevy by the sheriff *with delivery to the plaintiff* during the pendency of an action to recover a chattel constitutes a retaking within the meaning and intent of section 76 of the Personal Property Law. Moreover, the practical effect of the provisions of the Civil Practice Act is to render the sheriff's possession under a writ only temporary and contingent, for until the expiration of the three-day period after the sheriff executes the writ, the defendant may exercise the privilege of reclaiming the chattel and resuming possession. (Civ.

Prac. Act, § 1105.) Hence, during such three-day period it is impossible to say who will be entitled to the chattel. Therefore, the retaking contemplated by the statute occurs only when the vendor legally obtains the chattel from the sheriff.

The undisputed testimony is that after 4:00 P.M. on Tuesday, December 27, 1932, the sheriff notified Fisk that the cabs were to be released on December 28th. Their release on that date would be in exact accord with the statutory provisions which give to a defendant the privilege of reclaiming the chattel within three days after it has been replevied by the sheriff. This is so because the sheriff took possession on Friday, December 23d. The expiration of the three-day period ordinarily would be Monday, the 26th; but since Sunday, the 25th, was Christmas, Monday, the 26th, was a public holiday. Consequently, the three-day period .expired at midnight on Tuesday, the 27th (General Construction Law, §§ 19, 20; *Carter* v. *Brockway Motor Co., Inc.,* 248 App. Div. 734) and Brooklyn could have reclaimed the cabs up to midnight of the 27th. Therefore, Fisk was not entitled to possession of the cabs until the 28th, which is the date it actually obtained possession. As Fisk sold the cabs on January 6, 1933, it failed to " retain the goods for ten days *after the retaking* ", as required by section 78.

But even if we assume — as does Brooklyn in its brief — that December 27th is the date of retaking. it is equally clear that Fisk failed to comply with the statute. In computing the lapse of time between December 27, 1932, and January 6, 1933, we are required to exclude the first and include the last day. (General Construction Law, § 20; *H. E. & S. T. Corp.* v. *Checker Cab Sales Corp.,* 271 N. Y. 239; *Carter* v. *Brockway Motor Co., Inc.,* 248 App. Div. 734.) Therefore, in computing the ten-day period, December 28th is the first and January 6th is the tenth day. The cabs were resold on the tenth day. But the statute (Personal Property Law, § 78) requires that the seller, before he resells, shall retain the goods, not *until* the tenth day after the retaking, but " for ten days *after* the retaking ". " When the statute says *after* the expiration of a time named, that time must fully expire." (*Marvin* v. *Marvin,* 75 N. Y. 240, 242.) Obviously a seller who resells the goods within the ten-day period has failed to retain them " for ten days *after* the *retaking* ". The reference to a day means a calendar day; and a calendar day is one extending from midnight to midnight. (General Construction Law, §§ 19, 20.) In other words, to comply with section 78 the seller must retain the goods until the expiration of ten full days after the retaking and, consequently, he may not expose them

for resale until the eleventh day. (*H. E. & S. T. Corp.* v. *Checker Cab Sales Corp.*, 271 N. Y. 239; *Eisenberg* v. *Commercial Credit Corp.*, 267 N. Y. 80.)

Ordinarily the law does not concern itself with fractions of days, as in cases where an act is to be performed " within " or in " not less than " a specified period of time. In such cases performance at any hour during the last day is sufficient. But where the act is not to take place until " after " a specified time or event, then every fraction of the days within the specified period becomes material; and the entire period must elapse before the next act may be performed. (*Marvin* v. *Marvin*, 75 N. Y. 240, 242; *Carter* v. *Brockway Motor Co., Inc.*, 248 App. Div. 734; *Judd* v. *Fulton*, 10 Barb. 117.) Particularly with respect to a period of redemption, it has been held that the specified period of time must fully expire before the succeeding event may become effective. (*Aultman & Taylor Co.* v. *Syme*, 163 N. Y. 54, 64–65.)

The next question is whether the proof established that Fisk, after the retaking, resold the cabs without giving Brooklyn " not less than ten days' written notice of the sale ".

Section 79 of the Personal Property Law provides: " If the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid at least fifty per centum of the purchase price at the time of the retaking the seller shall sell them at public auction * * *. The seller shall give to the buyer not less than ten days' written notice of the sale, either personally or by registered mail * * *." Fisk mailed the notice of sale on December 27, 1932, and Brooklyn received it on December 28, 1932.

The ten-day notice of sale specified in section 79 and the ten-day period of redemption required by section 78, may run concurrently. (*Eisenberg* v. *Commercial Credit Corp.*, 267 N. Y. 80, 82–83.) But the mode of computing each period necessarily is different because under section 79 " *not less than ten days'* " notice is required, and under section 78 the seller must retain the goods " for ten days after the retaking ". As pointed out in the cases heretofore cited, under section 79 the notice is sufficient if it embraces *any part* of the tenth day, whereas under section 78 the period of retention is sufficient only if it embraces *every part* of the tenth day.

Therefore, if we deem the retaking to have occurred on December 27, 1932, the notice given on that day of a sale to be held on January 6, 1933, constituted " not less than ten days' " notice of the sale, as required by section 79. On the other hand, if, as we believe, the retaking occurred on December 28th, then the notice of sale was one day short of the ten days.

Brooklyn also urges that in computing the ten-day period under section 79, the day when the notice is received and not the day when it is mailed is the effective date. The court has held the date of mailing is controlling. (*Commercial Credit Corp.* v. *Ornstein,* 245 App. Div. 815, 816.)

Fisk also contends that section 79 does not apply as it was not required to give the ten days' notice of sale because at the time of the retaking 50% of the purchase price had not been paid. This contention is based on the premise that Brooklyn's indebtedness is represented by the last note for $82,669, upon which Brooklyn had paid only $7,000.

However, it is clear that the last note, the last conditional sales contract and the supplemental letter agreement were, in effect, an extension and modification of the terms of the prior notes and conditional sales contracts, and that the only indebtedness which existed was the original indebtedness of $199,200, incurred when the cabs were first purchased in 1931. Upon this original indebtedness Brooklyn paid, by cash and trade-in allowances, a total of $127,675, or more than 50% of the total purchase price.

As previously indicated, the court held that the release executed by Brooklyn on June 21, 1937, constituted a bar to its action and, therefore, dismissed the complaint. The court also held that the validity of the release may not be challenged in this action.

It will be necessary to summarize the evidence concerning the release and by whom and under what circumstances it was executed. True, the proof in this respect is confined to the testimony of Hyman. But while Hyman's testimony in large part was struck out insofar as it related to Brooklyn's defense of conditional delivery in the replevin action, the court permitted it to remain insofar as it related to Fisk's defense of release in Brooklyn's action for damages. Therefore, it appears without contradiction that when Brooklyn was unable to make further payments, it voluntarily surrendered the cabs to Checker or Fisk in January, 1932. The following month the cabs were returned to Brooklyn and, at the same time, Hyman delivered to Markin, pursuant to an oral agreement made on February 1, 1932, all Brooklyn's corporate books and issued capital stock owned by Hyman and the written resignations of all Brooklyn's officers and directors (with the exception of Hyman's resignation as director). The purpose of this was to give Fisk some security for the payment of the balance due pending the execution of a definitive contract. The note, the conditional sales

contract and the supplemental letter agreement executed by Brooklyn on March 15, 1932, constituted that definitive contract. Thereupon, Brooklyn became entitled to the return of its security. Markin, however, refused to return it and proceeded to acquire complete control of Brooklyn. On February 8, 1932, he transferred all Brooklyn's capital stock to Fisk's employee, one Freimark; and he caused Freimark and Miss Larkin, another employee, to be elected officers and directors. Hyman, who had retained his office as director, was elected president. On June 19, 1937, Freimark, Brooklyn's sole stockholder, held a " special meeting of stockholders " and elected as the new directors, himself, Feig and Reagan — the latter two also employees of Fisk. On the same date the newly-elected directors, after stating that the terms of the former officers had expired, named Reagan as president, Feig as vice-president, and Freimark as secretary and treasurer. Thereupon these directors adopted resolutions authorizing Brooklyn's officers to execute and deliver general releases to Fisk and Checker because: (1) Freimark stated it was desirable to do so in the best interests of Brooklyn; (2) Brooklyn is " justly and truly indebted to Fisk * * * in the sum of $75,669, with interest thereon from June 1, 1932," which indebtedness Brooklyn is unable to pay; (3) " it is the consensus of opinion " of the directors that Fisk is " justly and truly entitled to possession of the taxicabs for which the action in replevin was commenced " and that Brooklyn had no claims against Fisk or Checker.

Obviously, upon the execution of the definitive contract of March 15, 1932, Hyman was entitled to the return of his stock, delivered only as security, and Markin's or Fisk's refusal to return the stock constituted conversion. The transfer of the stock to Fisk's nominee in 1932 was unlawful and the stockholders' and directors' meetings of 1937 were illegal and, consequently, the release authorized by the alleged directors and executed by the alleged officers was a nullity It is well settled that a pledgee of stock, in the absence of an express agreement, has no right to vote the stock. (*Benkard* v. *Leonard*, 231 App. Div. 625, 629–630; *McHenry* v. *Jewett*, 26 Hun 453, revd. on other grounds, 90 N. Y. 58.) Moreover, the release was void for lack of consideration. (Cf. *Holland* v. *Presley*, 255 App. Div. 667 [2d Dept.], affd. 280 N. Y. 835.)

The court erred in holding that the validity of the release may not be challenged in this action. That defense was deemed controverted (Civ. Prac. Act, § 243), and its validity was an issue to be determined.

While on the proof Brooklyn is entitled to recover in this action, in the absence of a motion for a directed verdict — which counsel expressly refused to make — we may not direct judgment in its favor. (*Foltis, Inc.*, v. *City of New York*, 287 N. Y. 108, 113.)

The judgment insofar as it is in favor of Fisk and Checker in the replevin action, should be affirmed, without costs; but insofar as the judgment is in favor of Fisk in Brooklyn's action for damages, it should be reversed on the law and the facts, the action severed, and a new trial granted, with costs to abide the event.

LEWIS, P. J., HAGARTY, CARSWELL and NOLAN, JJ., concur.

Judgment insofar as it is in favor of the Fisk Discount Corporation and Checker Cab Sales Corporation in the replevin action, unanimously affirmed, without costs; but insofar as the judgment is in favor of the Fisk Discount Corporation in the action of the Brooklyn Taxicab Trans. Co., Inc., for damages, it is reversed on the law and the facts, the action severed, and a new trial granted, with costs to abide the event.