BULLDOG CONCRETE FORM SALES CORP. v. TAYLOR et al.

Civ. A. No. 946.

United States District Court
N. D. Indiana, South Bend Division.

Sept. 28, 1950.

Oliver A. Switzer, South Bend, Ind., Bernard Weissbourd, Chicago, Ill., for plaintiff.

James E. Keating, J. P. Miller, South Bend, Ind., for defendants.

PLATT, District Judge.

This is a proceeding to obtain judgment against defendants for a deficiency after resale by the seller under the Conditional Sales Act of Indiana, Burns' Indiana Statutes Annotated, Section 58-817, which is as follows: "If the buyer does not redeem the goods within ten (10) days after the seller has retaken possession and the buyer has paid at least fifty (50) per cent of the purchase-price at the time of the retaking, the seller shall sell them at public auction in the state where they were at the time of the retaking, or at the place where the goods were sold; such sale may be held not less than ten (10) days or more than thirty (30) days after the retaking: 'Provided, however, That when the seller retakes possession of the goods by legal process, the seller may hold such retaken goods for a period not to exceed thirty (30) days after the entry of a judgment by a court of competent jurisdiction entitling the seller to possession of such goods before holding such resale. The seller shall give to the buyer not less than ten (10) days' written notice of the sale, either personally or by registered mail, directed to the buyer at his last known place of business or residence. The seller shall also give notice of the sale by at least three (3) notices posted in different public places within the filing district (county) where the goods are to be sold, at least five (5) days before the sale. If at the time of the retaking five hundred dollars ($500) or more has been paid on the purchase-price, the seller shall also give notice of the sale at least five (5) days before the sale by publication in a newspaper published or having a general circulation within the county where the goods are to be sold. The seller may bid for the goods at the resale. If the goods are of the kind described in section seven (§ 58-807), the parties may fix in the conditional sale contract the place where the goods shall be resold. (Acts 1935, ch. 182, § 17, p. 909)."

Defendants filed an answer, and at the close of the trial before the court asked leave to file additional defenses. The pertinent facts disclosed that plaintiff was an Illinois corporation and defendants were residents of Indiana. The defendants rented from Bulldog Concrete Forms, Inc., a New York corporation, certain steel forms to be used in the construction of basements for houses. These forms were delivered to the defendants on or prior to April 9, 1948. On June 10, 1948, after the defendants had used the forms, they entered into a conditional sales contract with Bulldog Concrete Forms, Inc. to purchase these forms for the sum of $12,782.95. Defendants had paid $1,900 on the rental agreement for the forms with the seller and this amount was applied as the down payment on the purchase price. Defendants failed to make the payment due on July 15, 1948. At the request of the plaintiff, who was acting for the seller of the forms, Bulldog Concrete Forms, Inc. and was the sales agency in the district for the seller, defendants delivered the forms to the plaintiff at its warehouse in Chicago in the defendants' trucks on August 3 and August 5, 1948. Defendants had used the forms on the construction of 70 houses while in

their possession. On August 10, 1948 plaintiff received the assignment of the conditional sales contract from Bulldog Concrete Forms, Inc. On August 18th plaintiff wrote defendants and informed them of their intention to sell the forms as provided by the Indiana Conditional Sales Act, and again on August 20, 1948 notified defendants by registered mail of the sale of the forms under the Act and the date and place of sale. Said notices were offered as Plaintiff's Exhibit No. 3 and are as follows:

"August 18, 1948
"Registered Mail
"Return Receipt Requested
"Mr. Wm. C. Taylor
"c/o Taylor Brothers
"3535 E. McKinley Road
"South Bend, Indiana
    "In re: Bulldog Concrete Forms, Inc.

"Dear Sir:
    "You are hereby formally notified, in accordance with the Indiana Statutes therein made and provided, that we have been retained by the above designated corporation to take the necessary legal steps to enforce the conditional sales contract which was entered into with you on the 10th day of June, 1948.
    "We herewith formally notify you that on the 30th day of August, 1948, at 2:00 P.M., a public sale will be held of the equipment covered by that conditional sales agreement. Said equipment will be sold, to the highest bidder, and if any deficiency arises by virtue of that sale, we shall hold you responsible therefor.
                "Very Truly yours,
                    "(signed)
"MTR:LC            Milton T. Raynor"
                "August 20, 1948
"Mr. William C. Taylor
"c/o Taylor Brothers
"3535 East McKinley Road
"South Bend, Indiana
    "Re: Bulldog Concrete Forms, Inc.

"Dear Sir:
    "The public sale of the equipment covered by the conditional sales agreement of June 10, 1948, about which you were notified by registered mail on August 18, 1948, will take place in Room 900, 33 North LaSalle Street, Chicago, Illinois, at 2:00 P.M. on the 30th day of August, 1948.
                "Very truly yours,
                    "(Signed)
"MTR            Milton T. Raynor
"Registered Mail
"Return Receipt Requested"

On August 25 plaintiff posted the notice of the sale in three different public places in Chicago, Cook County, Illinois where the goods were to be sold. They were posted in the following places; at the bulletin board of the Chicago Daily Law Bulletin, No. 34 North LaSalle Street, at the north door and the south door of the County and City Building, all being located in the City of Chicago, County of Cook, and State of Illinois. On the same day the notice was published in the Chicago Daily Law Bulletin. The notice was as follows, viz.:

"Public Sale

"Public notice is hereby given pursuant to the Indiana Conditional Sales Act, that certain steel concrete forms retaken under a conditional sales agreement and used in the construction of houses, will be sold at public auction to the highest bidder, at the office of Milton T. Raynor, 33 N. LaSalle Street, Room 900, Monday, August 30, 1948, at 2:00 P.M.
    "The concrete forms may be inspected at the Duro-Industries Warehouse, 502 S. Canal Street, at any time prior to the sale.
    "August 25, 1948.
            "Milton T. Raynor,
                "Attorney.        Aug—25"

In accordance with the notices the sale was held at the office of Milton T. Raynor at 2:00 P.M., August 30, 1948. Plaintiff was the only bidder and bought the forms at auction for the sum of $4,800. This amount was credited on the amount due plus costs of taking possession and sale, leaving a balance due plaintiff of $6,082.95. Defendants by their answer denied the compliance with the statute heretofore quoted and in special affirmative defenses filed at the close of all the evidence allege

that the $4,800 was an inadequate price and that there was a breach of implied warranty in the sale of the forms.

Defendants in their brief have raised many points in a "shotgun" style in defense of their position that plaintiff should not recover. This court will attempt to discuss each point as to the facts and law involved.

■ The Conditional Sales Act heretofore quoted requires that the sale take place at a public auction. Defendants maintain that a public auction must be held in a public place. However, a public place is to be determined from the facts in each case as to whether it is or is not a public place. A place may be public at one time and private at another. Under the facts in the instant case, notice was given of the sale in the office of Milton T. Raynor after due notice inviting the public to bid. True, the sale was held in his private office, but the public was invited to come and bid. The stenographer in the outer office knew of the sale being held and was told to send anyone in who wished to bid on the forms. It was held in Dulin v. National City Bank, Ind. App., 130 N.E. 426, at page 428: "According to the authorities, for a sale to be a 'public sale', it must be held in a public place, a place to which the public, as such, have access. To be a public sale there should also be some notice of the time and place of such sale, in order that purchasers may advise themselves of the terms and the title to said property, and be enabled to bid intelligently."

■ The second point of defendants is that the notice published in the Chicago Daily Law Bulletin does not say Chicago, Illinois as fixing the place. The notice must be read to determine if it does actually give notice of the time and place to a reasonable man who might be interested in the purchase of the forms and also in light of the fact as to whether there was any prejudice to the defendants. In H. L. Braham & Co. v. Zittel, 232 App.Div. 406, 250 N.Y.S. 44, at page 48, which was a sale under the Conditional Sales Act of New York, the Court said: "The form of the notice of sale to be given is not prescribed by the statute. There is nothing technical about the word 'notice.' The term should receive a reasonable interpretation. It does not involve the idea of great formality. * * * So long as it is framed and worded in such a manner as to reasonably convey to the purchaser information of the time when and place where the sale will take place, it is sufficient." A copy of the Chicago Daily Law Bulletin was introduced in evidence as Defendants' Exhibit No. 1. It is to be observed that none of the advertisements in the paper carry the City of Chicago. Anyone interested in the sale would have realized that 33 North LaSalle Street, Room 900, was in the City of Chicago, being published in the Chicago Daily Law Bulletin.

■ The third point raised by defendants is that the statute required at least three notices posted in different public places "within the county where the goods are to be sold". Defendants argue from McDaniel v. Wetzel, 264 Ill. 212, 106 N.E. 209, L.R.A.1916E, 1140, that inasmuch as both of the notices were at the courthouse and city building that this was not two different public places. A careful reading of this case shows that in that case the two doors of the courthouse were not different places, but in the instant case where the City and County Buildings in the City of Chicago cover the block from Randolph Street to Washington Street, and considering also the evidence as to the number of people who enter and leave by the north door and the south door of this building, it is quite obvious that they were two different public places. The evidence is conclusive that many people went in and out of each door daily and could have seen the notice. In Johnson City Buick Co. v. Johnson, 165 Tenn. 349, 54 S.W.2d 946, the Court gave a liberal construction to compliance with the notice so long as the buyer was not prejudiced. From the evidence, the bulletin board at the Chicago Daily Law Bulletin was certainly a public place for the posting of a notice. The bulletin board was so situated that the public in passing could see the notice if they happened to look.

The fourth point raised by defendants is that the Chicago Daily Law Bulletin does not comply with a publication in a newspaper published or having a general circulation within the county "where the goods are to be sold". The Chicago Daily Law Bulletin, Defendants' Exhibit No. 1, shows that in addition to the legal news it also carries various news items of general interest as well as court dockets, etc. It is published in the City of Chicago daily except Sunday. By order of the District Court of the United States, Northern District of Illinois, Eastern Division, the Chicago Daily Law Bulletin has been designated as one of the newspapers in Cook County for the publication of all notices. In re Sterling Cleaners & Dyers, Inc., 81 F.2d 596, at page 598, the Circuit Court of Appeals for the 7th Circuit cited Lynn v. Allen, 145 Ind. 584, 44 N.E. 646, 647, 33 L.R.A. 779, 57. Am.St.Rep. 223, and held that the Chicago Daily Law Bulletin was a newspaper within the Bankruptcy Act, 11 U.S.C.A. § 51, for publication of notices of first creditors' meetings. It further held the Chicago Daily Law Bulletin is a newspaper of general circulation. This case also bases its decision upon numerous Illinois decisions. There can be no question as to this point, as the Uniform Conditional Sales Act requires a newspaper published in the county *or* of general circulation.

Defendants have cited Sections 49-710 and 49-711 of Burns' Indiana Statutes, 1933, 1949 Cum.Pocket Supp. The complete act of the General Assembly reads as follows:

"Acts of Indiana General Assembly, 1939

"Chapter 84.

"An Act concerning legal advertising and publication of legal notices, defining newspapers of general circulation, prescribing the duties of public officials and other persons, and providing penalties for failure to comply therewith.

(H. 368. Approved March 9, 1939.)

"Legal Notices—Publishing.

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That in all cases where the law now provides for the publication of legal notices in any newspaper it shall hereafter be unlawful for any public official or other person to make such newspaper publication in any manner except by publication in either a daily, weekly, semiweekly or triweekly newspaper printed in the English language and entered, authorized and accepted by the postoffice department of the United States of America as mailable matter of the second class and conforming to the requirements of mailable matter of the second class as defined by the act of Congress of the United States of March 3, 1879.

"Newspaper Requirements.

"Sec. 2. In addition to the requirement for all newspapers provided in Section 1 hereof, a newspaper in which notices and reports and other information affecting county business are required by law to be published shall have, except in counties in which there is located a first, second or third class city, a net paid circulation of not less than 2% of the population of the county in which it is published as shown by the last United States decennial census.

"Offenses—Penalty.

"Sec. 3. Any public official or person who shall fail or refuse to comply with the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than twenty-five dollars and not more than one hundred dollars.

"Act Supplemental.

"Sec. 4. This act shall not be deemed to alter, amend or repeal any other act of the State of Indiana, but shall be supplemental and in addition to any other law now in force requiring all legal notices to be published in a newspaper of general circulation." Burns' Ann.St. §§ 49-710 to 49-713.

This statute is obviously a penal statute in that it reads, "it shall hereafter be unlawful for any public official or other person to make such newspaper publication in any manner except by publication in either a daily, weekly, semiweekly or triweekly newspaper * * *." Section 3 specifically makes it an offense as a misdemeanor and fixes a fine of twenty-five dollars and not more than one hundred dollars for a

violation of this statute. Section 2 of this Act has application only to notices affecting county business and is not applicable. This statute could not apply to a sale under the Uniform Conditional Sales Act which takes place in Illinois. In general, criminal laws have no extra-territorial operation or effect. 22 C.J.S., Criminal Law, § 28, p. 83. It is well settled that territorial scope of penal statutes is limited to the confines of the state whose will they represent. Pryce v. Swedish-American Lines, D.C., 30 F.Supp. 371; Cruthers v. State, 161 Ind. 139, 67 N.E. 930; Rogers v. Western Union Telegraph Co., 122 Ind. 395, 24 N.E. 157.

As the fifth point defendants claim that there was not five full days notice between the first publication in the Chicago Daily Law Bulletin on August 25th and the sale at 2 P.M. on August 30th. The Chicago Daily Law Bulletin is published in the late afternoon. Counsel have cited Fisk Discount Corp. v. Brooklyn Taxicab Trans. Co., 270 App.Div. 491, 60 N.Y.S.2d 453, 462. It is to be observed that the conditional sales act requires at least five days notice before the sale and not after five days notice. In Fisk Discount Corp. v. Brooklyn Taxicab Trans. Co., supra, the Court said: "Ordinarily the law does not concern itself with fractions of days, as in cases where an act is to be performed 'within' or in 'not less than' a specified period of time. In such cases performance at any hour during the last day is sufficient." This was a case under the conditional sales act. In a similar case on time in Indiana, Keeling v. Board of Zoning Appeals, 117 Ind.App. 314, 69 N.E.2d 613, it was held that where an ordinance required at least seven days notice and the same question was raised fractions of days were not recognized.

Points six, seven, and eight offered in defense are in reality a questioning of the validity of the sale for $4800 and the purchasing of the forms in question by the plaintiff, the assignee of the seller. The Uniform Conditional Sales Act, Par. 19, expressly provides the seller may bid for the goods at the re-sale. Therefore, there was nothing irregular in this sale in that the plaintiff bid and purchased at the sale. There was no evidence produced upon which the court could rely that $4800 was an inadequate bid, nor was there any evidence of fraud or irregularity in the sale. Even in a judicial sale inadequacy of price in itself would not be sufficient to make the sale void. Benton v. Shreeve, 4 Ind. 66; Sowle v. Champion, 16 Ind. 165.

By the ninth point the defendants claim there is a duty to strictly comply with the conditional sales act in reselling repossessed property to recover a deficiency from the purchaser. In the cases cited by defendants the courts have held that the statute must be complied with strictly as to the giving of notice of sale, but they do not hold that substantial compliance in the form of the notice defeats the right to recover. In Mack International Motor Truck Corp. v. Thelen Trucking Co., 205 Wis. 434, 237 N.W. 75, 83 A.L.R. 952, there was only nine days notice, whereas the statute required ten days notice, and the Court held that this notice was insufficient. In Beets v. John R. Jarnagin Motor Co., 180 Tenn. 358, 175 S.W.2d 326, no time of the sale was fixed by the notice. Defendants have cited these two cases as requiring strict compliance with the statute. This is true only as to the conditions prescribed by the statute for the length of time of the notice and the necessary contents in the notice but does not go to the form of the notice.

In point ten of defendants' brief they object to Plaintiff's Exhibit No. 3 in that its subject is "Bulldog Concrete Forms, Inc." when in fact it was a notice by Bulldog Concrete Forms Sales Corporation. This in reality is answered by the fact that substantial compliance with the statute is sufficient so long as the buyer's rights are not prejudiced. The assignee Bulldog Concrete Forms Sales Corporation brought this action as the real party in interest, as provided by Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A. but this did not prohibit the use of the name of the seller in the notice. Defendants had received no notice of the assignment. All defenses might be made against the assignee that could be made against the assignor. The buyer would have no right to object

to the use of the assignor's name by the assignee. 6 C.J.S., Assignments, § 124, p. 1172.

It certainly cannot be maintained as defendants urge that possession of the forms in question was taken at South Bend, Indiana. The forms were delivered in the defendants' trucks at the defendants' direction to plaintiff's warehouse in Chicago. The plaintiff obtained possession by consent of the defendants and the defendants voluntarily delivered them to him in Chicago. Defendants do not claim anywhere in their brief, and they raise enough points without a doubt, that the sale should not have taken place in Chicago. The conditional sales act of Indiana specifically provides the seller shall sell them at public auction in the state where they were "at the time of the retaking, or at the place where the goods were sold". The goods were certainly not sold in Illinois and the retaking certainly must have been in Illinois. The sale was held on August 30th, and the forms were sold within the 30 days after retaking as provided by the conditional sales act.

■ As a fourteenth point defendants claim that there has been a breach of an implied warranty under Section 58-115, Burns' Ind. Statutes, which reads as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

In Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 2 Cir., 23 F.2d 416, at page 420, the Court said: " * * * and subdivision 3 provides that, if the buyer has examined the goods, there is no implied warranty as regards defects which such examination would have revealed. Here the seller was not, by reason of his skill and judgment, in a better position than the buyer to determine whether or not the springs in question would be fit for the particular use for which they were intended by the plaintiff, and it was not justified and did not rely upon such skill and judgment in making its purchase. There is no such finding below. Indeed, the findings disclosed that the seller and buyer are on equal footing in regard to the ability to assert the suitability of the springs for the plaintiff's particular purpose."

The evidence clearly demonstrates that the buyer in this case did not rely upon the seller's skill or judgment before he purchased the forms. They were delivered to him according to his testimony about April 9th. He did not purchase them until June 10th, and he used them on some 70 foundation walls during the period he had them. It was he who suggested that holes be placed in the forms to bolt them together. He rented them under a rental agreement and paid $1900 rent which was applied as the down payment upon the purchase price. Of his own volition on June 10, after having had the forms and used them, he then purchased them. He certainly has not brought himself within the provision of implied warranty of the sales act.

■ Plaintiff introduced in evidence a check payable to Bulldog Concrete Forms, dated July 6, 1948 in the amount of $500, which was cashed by Bulldog Concrete Forms, Inc. We can find no credit for this amount, and plaintiff should have judgment herein for the amount due and expenses on this contract less the $500 paid by defendant to Bulldog Concrete Forms, Inc., prior to the assignment of the contract.